Citation Nr: 1714116 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 10-37 188 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for the period prior to April 19, 2013 for a chronic lumbosacral strain.

2. Entitlement to a rating in excess of 20 percent for the period since April 19, 2013 for a chronic lumbosacral strain.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

James A. DeFrank, Counsel


INTRODUCTION

The Veteran served on active duty from August 1992 to December 1994.

These matters are before the Board of Veterans' Appeals (Board) on appeal from a May 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas, which denied service connection for a bilateral foot condition, to include as due to service-connected chronic lumbosacral strain; continued the 10 percent evaluation currently assigned for a chronic lumbosacral strain, and; granted service connection for radiculopathy of the left lower extremity and assigned a 10 percent disability rating, effective November 25, 2008. 

In April 2012, the Veteran testified during a Videoconference hearing before the undersigned Veterans Law Judge. A copy of the hearing transcript is of record.

In February 2013, the Board remanded these issues for additional development while also noting that the Veteran claimed that a separate compensable rating was warranted for radiculopathy of his right lower extremity.

In January 2014, a rating decision increased the Veteran's evaluation for a chronic lumbosacral strain to 20 percent, effective April 19, 2013, the date of medical evidence showing worsening. The Board notes that since the increase to 20 percent did not constitute a full grant of the benefits sought, the issue of entitlement to a rating in excess of 20 percent for the period since April 19, 2013 remains in appellate status. AB v. Brown, 6 Vet. App. 35, 39 (1993).

In a January 2014 correspondence, the Veteran disagreed with the 20 percent rating and the assigned effective date of April 19, 2013, for the Veteran's 20 percent rating, noting that the Veteran filed his claim for an increased rating on January 29, 2007. The Board notes that although the Veteran's representative characterized this claim as a disagreement with the effective date of the 20 percent rating, this was essentially an increased rating claim for the period prior to April 19, 2013.

Additionally, the Board also notes that while the Veteran noted the date of the initial claim for increase was January 29, 2007, an April 2007 rating decision continued the 10 percent rating for a chronic lumbosacral strain. More than one year after this rating decision, the Veteran filed a new claim for increased rating which was received on December 30, 2008. The Board notes that, under 38 C.F.R. § 3.400(o) (2), an increased evaluation can be granted up to one year prior to the date of claim. The issues have been recharacterized accordingly.

In April 2014, the Board referred the case to the Veterans Health Administration (VHA) of the VA for a medical opinion. In September 2014 a VHA medical opinion was rendered.

In a January 2015 decision, the Board, in part, denied the Veteran's claims for a rating in excess of 10 percent for the period prior to April 19, 2013 and a rating in excess of 20 percent for the period since April 19, 2013 for a chronic lumbosacral strain. The Veteran appealed the decision to the U.S. Court of Appeals For Veterans Claims (Court). In a March 2016 Joint Motion for Partial Vacatur and Remand, the Court partially vacated the January 2015 Board decision regarding the increased rating claims for chronic lumbosacral strain and remanded these claims for further appellate review.

In September 2016 the Board remanded these issues for additional development.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.





REMAND

Unfortunately, an additional remand of the Veteran's claims for a rating in excess of 10 percent for the period prior to April 19, 2013 and a rating in excess of 20 percent for the period since April 19, 2013 for a chronic lumbosacral strain is warranted. Although the Board regrets the additional delay associated with an additional remand, further development of the record is required before the Board may render a decision in the instant case. When the Board's remand orders are not complied with, the Board errs as a matter of law when it fails to ensure compliance. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

In its September 2016 remand, the Board instructed the RO to schedule the Veteran for a VA examination to determine the current severity of his service-connected chronic lumbosacral strain.

A March Supplemental Statement of the Case (SSOC) indicates that the Veteran failed to report for a examination that was scheduled in December 2016. 

The Veteran was previously scheduled for a VA examination in November 2016 that was cancelled. The Veteran informed VA that he was unable to attend this VA examination because he was a teacher and therefore needed an examination preferably scheduled over the holiday break between December 21, 2016 and January 9, 2017.

The record demonstrates that the Veteran was subsequently scheduled for a VA examination on December 23, 2016. However, as noted above, the Veteran failed to report for this examination.

However, the record is unclear as to whether the Veteran received advanced notice of this examination. The claims file does not contain a copy of the letters notifying the Veteran of his December 23, 2016 examination. 

Rather, the record simply contains a November 2016 Report of General Information which details the reasons for rescheduling the appointment due to the Veteran's teaching schedule and the notation that an appointment had been rescheduled with the holiday vacation information.

A copy of a subsequent letter to the Veteran informing him of the scheduling of his December 23, 2016 VA examination is not included in the claims folder. 

When a veteran fails without good cause to report for a necessary VA examination requested by VA in conjunction with a claim for increased compensation, the claim will be denied. Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant, death of an immediate family member, etc. 38 C.F.R. § 3.655(a), (b) (2016). 

In this instance, the Board finds that good cause for the Veteran's failure to report for his December 2016 VA examination has been shown. Of particular importance to the Board in this matter is the absence of evidence in the claims folder that the Veteran was properly notified of the scheduling of his December 2016 VA examination. Therefore, the Board concludes that another attempt should be made to schedule the Veteran for the requested VA examination. 

The Board does note however that VA's duty to assist claimants is not always a "one-way street." In other words, a claimant seeking help cannot passively wait for it in those circumstances where he or she may or should have information that is essential in obtaining putative evidence. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Indeed, in instances where a claimant fails without good cause to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record. 

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be requested to provide the names, addresses and approximate dates of treatment of all medical care providers, VA and non-VA, who have treated him for the disability on appeal. After the Veteran has signed the appropriate releases, those records should be obtained and associated with the claims folder. 

Appropriate efforts must be made to obtain all available VA treatment records. All attempts to procure records should be documented in the file. If the AMC/RO cannot obtain records identified by the Veteran, a notation to that effect should be inserted in the file. The Veteran is to be notified of unsuccessful efforts in this regard, in order to allow him the opportunity to obtain and submit those records for VA review.

2. The Veteran should be afforded a VA examination by an examiner with sufficient expertise to determine the nature and extent of all impairment due to the Veteran's service-connected chronic lumbosacral strain disability.

The examiner's report must explicitly state that the Veteran's claims file was reviewed prior to the examination of the Veteran. All indicated studies, including x-ray and range of motion studies in degrees, should be performed. The examiner should conduct range of motion testing of the thoracolumbar spine (expressed in degrees) on both active motion and passive motion and in both weight-bearing and non-weight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

In reporting the results of range of motion testing, the examiner should identify any objective evidence of pain and the specific excursion(s) of motion, if any, accompanied by pain. To the extent possible, the examiner should assess the degree of severity of any pain. 

The extent of any pain, incoordination, weakened movement, and excess fatigability on use should be described. To the extent possible, the additional functional impairment due to pain, incoordination, weakened movement, and excess fatigability should be assessed in terms of the degree of additional range of motion loss. If this is not feasible, the examiner should so state and provide an explanation as to why it is not feasible. 

In addition, the physician should address the functional impairment caused solely by the Veteran's lumbar spine disability during periods of flare-ups. The examiner is asked to equate such functional losses to additional degrees of limited motion (beyond that shown clinically). If the examiner is unable to provide an opinion as to the additional degree of limited motion as result of functional loss, then the examiner must state so and explain why an opinion cannot be provided.

The examiner should specifically identify any evidence of radiculopathy due to the service-connected lumbar spine disability, to include reflex changes, characteristic pain, loss of sensation, motor strength, and muscle spasm. Any functional impairment of the extremities due to the Veteran's service-connected lumbar spine disability should be identified, and the examiner should assess the frequency and duration of any episodes of intervertebral disc syndrome, and in particular should assess the frequency and duration of any episodes of acute signs and symptoms of intervertebral disc syndrome that require bed rest prescribed by a physician and treatment by a physician. 

The examiner should explain the rationale for all opinions.

3. If the Veteran does not report for the aforementioned examination, documentation must be obtained which shows that notice scheduling the examination was sent to his last known address. Such documentation should be associated with his claims folder. If the notice is returned as undeliverable, documentation attesting to that fact should also be associated with the claims folder. 

4. Then, after ensuring any other necessary development has been completed, adjudicate the Veteran's claims. If action remains adverse to the Veteran, provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate opportunity to respond. Thereafter, the case should be returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other 

appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




_________________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).